DAVID B. TILLOTSON (State Bar # 148162)
dtillotson@lpslaw.com
RAVI D. SAHAE (State Bar # 276113)
rsahae@lpslaw.com
LELAND, PARACHINI, STEINBERG,
  MATZGER & MELNICK, LLP
199 Fremont Street - 21st Floor
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Plaintiff CTI III, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CTI III, LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BARRY DEVINE, an individual; TRI-MERIT, LLC, an Illinois limited liability company,<br><br>　　　　　Defendant. | Case No. 2:21-CV-02184-JAM-DB<br><br>**FIRST AMENDED COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONFIDENTIALITY AGREEMENTS, AND ECONOMIC INTERFERENCE**<br><br>**DEMAND FOR JURY TRIAL** |

{CTILLC/0002/PLD/01798231.DOCX}

FIRST AMENDED COMPLAINT

**PARTIES TO THE ACTION**

1. Plaintiff CTI III, LLC ("Plaintiff" or "CTI") is a California limited liability company with its principal place of business in Sacramento, California.

2. Defendant Barry Devine ("Devine") is an individual and resident of Colorado.

3. Defendant Tri-Merit, LLC ("Tr-Merit") is an Illinois limited liability company with its principal place of business in Schaumburg, Illinois. Devine works for Tri-Merit (collectively, "Defendants").

4. At all times since Devine commenced working for Tri-Merit, Devine was the agent and/or employee of Tri-Merit. Upon information and belief and likely to have evidentiary support after reasonable discovery, all of Devine's acts and omissions alleged herein following such commencement, were taken in the course and scope of Devine's authority as such agent and/or employee of Tri-Merit, whether express or implied. Upon information and belief and likely to have evidentiary support after reasonable discovery, Tri-Merit has ratified and adopted each of the acts and omissions hereinafter alleged of Devine.

**JURISDICTION**

5. This action was removed from state court to federal court by Defendants on the basis of diversity jurisdiction.

6. Defendant Devine is subject to jurisdiction in the courts of this State because: CTI, in California, employed Devine as alleged below, who was enabled by such employment to breach the employment and employment-related contracts giving rise to the claims alleged below, and to misappropriate the Trade Secrets (as defined below) giving rise to the claims alleged below, and to disclose the Confidential Information (as defined below) giving rise to the claims alleged below. At all times during his employment with CTI, Devine reported to CTI's principals located in Sacramento, California and was provided direction, leads, and instruction by CTI's principals located in California. In performance of his employment, Devine was present in California (at least, prior to COVID-19) on average 10-15% of the time, coming to California roughly 2-3 times per month. Devine's compensation was set and authorized in California, and the funds for his paychecks came from CTI's banks located in California. Devine accessed CTI's systems located in

California, as alleged below, in order to misappropriate the Trade Secrets and Confidential Information. In soliciting CTI's clients and interfering with CTI's economic relations, as alleged below, Devine targeted his solicitations and interference at California clients and California economic relationship partners, directing in-person, telephonic, and written communications toward such recipients in California. Devine has derived substantial revenue from these activities. Devine knew that his disclosure and use of Trade Secrets, disclosure and use of Confidential Information, and solicitations and interference would injure CTI, a California entity, in California.

7.   Defendant Tri-Merit is subject to jurisdiction in the courts of this state because: Acting as Tri-Merit's agent (as alleged above), and/or in taking actions subsequently adopted and ratified by Tri-Merit (as alleged above), Devine accessed CTI's systems located in California, as alleged below, in order to misappropriate the Trade Secrets and Confidential Information; and in soliciting CTI's clients and interfering with CTI's economic relations, as alleged below, Devine targeted his solicitations and interference at California clients and California economic relationship partners, directing in-person, telephonic, and written communications toward such recipients in California. Tri-Merit has derived substantial revenue from these activities. Tri-Merit knew or should have known that its and Devine's disclosure and use of Trade Secrets, disclosure and use of Confidential Information, and solicitations and interference would injure CTI, a California entity, in California.

**GENERAL ALLEGATIONS**

8.   CTI is a tax consultancy firm doing business (itself and through predecessor entities) since 2001. CTI is an established business in the highly-specialized tax incentive industry with clients spanning diverse industries, from architecture to wineries. CTI's clients include industry leaders in healthcare, construction, engineering, retail, energy, software, manufacturing, and hospitality, among others. CTI's clients are primarily based in California, but not exclusively – CTI has clients across the country.

9.   Devine was employed by CTI from 2012 through 2020. For much of his tenure, and up until the cessation of his employment on November 10, 2020, Devine held the position of Director of Business Development.

10. Tri-Merit is Devine's current employer. Tri-Merit is a competitor of CTI's in the tax incentive industry.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Misappropriation of Trade Secrets – Defend Trade Secrets Act (18 USC Sec. 1831 *et seq.*)**

*Against Devine and Tri-Merit*

11. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

12. During its two decades of existence, CTI has made a considerable investment in confidential proprietary information which derives independent economic value from not being generally known to, nor readily ascertainable through proper means by, another person (including Tri-Merit) who can obtain economic value from the disclosure or use of the information (the "Trade Secrets").

13. CTI's Trade Secrets include a proprietary and confidential customer list, containing significant operators in the architecture, design, healthcare, construction, engineering, retail, energy, software, manufacturing, and hospitality industries, as well as referral sources, primarily the CPAs and accounting firms servicing such industry operators. The specialized tax-incentive industry is highly referral-driven. In any given year, up to 90% of CTI's business has been through referrals. The particular operators and associated referral sources are those who have (or CTI in its years of experience anticipates having) special need and/or eligibility for the specialized tax benefit services that CTI provides.  The information is not only a list of current and potential clients, but includes pricing information about proven clients and their pricing preferences, preferred or customary terms of their fee arrangements, the economic terms and revenues derived and arising from the client and referral relationships, and often includes private and particular contact information for the client or referral source not otherwise readily available. Where the client has gone through the scoring process under the proprietary software described below, that scoring information is provided as well. CTI has built this database of customer information through decades of its performance in this industry and direct contact with the clients, hundreds of

1  hours of research, including prior order and pricing information. Indeed, the CPAs and referral
2  sources keep this specific information about their clients in the strictest confidentiality and CTI
3  would not know it but for that direct experience. Many of the clients are regular and frequent
4  consumers of CTI's services and have been so for years. Any competitor would obtain substantial
5  economic value, and indeed a crippling advantage over CTI, by being able to assess the viability
6  and profitability of a given client through CTI's proprietary scoring system, by knowing exactly
7  what clients to target using exactly what terms and conditions that client prefers, and by having
8  access to the client information otherwise kept strictly confidential by the CPAs and referral
9  sources. CTI therefore derives substantial economic value from being the only provider able to
10 utilize this client information.

11       14. CTI's Trade Secrets include a proprietary and confidential structure organizing the
12 tax-incentive analysis and service process into particular segments, and bundling particular
13 segments and services together, a structure honed through CTI's many years of experience to be
14 attractive and desirable to clients. These segmentation and bundling structures are not commonly
15 used in the industry, they are the product of two decades of tailoring CTI's processes according to
16 client feedback and satisfaction. Any competitor would derive substantial value from being able to
17 mimic these structures as they have proven highly effective at generating clientele. CTI therefore
18 derives substantial economic value from being the only provider able to offer these structures to
19 clientele.

20       15. CTI's Trade Secrets include a confidential and proprietary structure for charging
21 and payment of fees, conceived and developed by CTI, that in addition to its desirability as part of
22 the segmentation and bundling structure alleged above, also provides tax benefits to both CTI as
23 well as CTI's clients. Because of the tax benefits provided to the clients, the clients are
24 overwhelmingly attracted to the fee structure and it is a highly effective selling point for CTI. This
25 particularized treatment of the fee structure is not commonly used in the industry. Because of its
26 effectiveness as a selling point, other competitors would derive substantial value from being able
27 to provide a fee structure obtaining the same tax benefits. Additionally, such competitors would
28 also derive substantial economic value in their own right, as the structure provides tax benefits on

both sides. CTI therefore derives substantial economic value from being the only provider able to offer this fee structure and its associated benefits to clientele, as well as from realizing the tax benefits for itself.

16. CTI's Trade Secrets include a confidential and proprietary software, developed and coded in-house, providing a comprehensive software solution and process for obtaining and analyzing underlying documentation and calculating tax credits. The software uses a unique and proprietary scoring system based on certain analytic points to market and advise prospective clients about the potential benefits available through CTI's services. CTI is able to put on a demonstration of use of the software using the client or CPA's actual data, giving the marketing a concrete basis for the client as opposed to just advertising services in the abstract. Furthermore, this software was innovated from and draws upon CTI's principals' experience and background in IRS audits, and promotes the efficiency and reliability of audit defense through its access, organization, and presentation of source documentation. The proprietary software is another effective selling point for CTI's clients, not only because of the unique scoring system and its ease and effectiveness in communicating potential benefits, but also due to the ever-present shadow of an IRS audit whenever tax-benefit services are being offered. CTI's competitors do not have this software nor, upon information and belief and likely to have evidentiary support after reasonable discovery, anything similar to it. Such competitors would derive substantial economic value from being able to provide clients with the use of the software. As such, CTI derives substantial economic value from being the only provider able to market and demonstrate services, as well as address client concerns and protect against audits, through the proprietary software.

17. CTI has used and continues to use each and every one of these Trade Secrets in interstate commerce. As alleged above, though CTI's clientele is primarily located in California, CTI has clients nationwide.

18. These Trade Secrets were not generally known to the public, or to those who could obtaining value from knowing them, and CTI has made reasonable efforts to keep such secrecy. At all times, CTI required its employees and contractors to keep the Trade Secrets confidential, and only authorized its employees and contractors to use the specific portions of Trade Secrets

necessary for the specific task or service performed (for example, by requiring employees such as Devine to enter into confidentiality agreements such as the Confidentiality Agreement described below).

19. Devine transmitted, downloaded, acquired, and/or otherwise transferred information and data from CTI's computer systems to his own personal computer systems, even after cessation of his employment. Such transmission, download, acquisition, and transfer was unauthorized, and in breach of the restrictions alleged in the preceding paragraph and below, both for his own individual benefit and for the benefit of his then-prospective or current employer, Tri-Merit. Upon information and belief and likely to have evidentiary support after reasonable discovery, said information and data included (though was not limited to) some or all of the Trade Secrets alleged above. Upon information and belief and likely to have evidentiary support after reasonable discovery, Devine and Tri-Merit then used the Trade Secrets to solicit current and potential clients and referral sources of CTI.

20. Tri-Merit was advised of the restrictions referred to in paragraph 18, and particularly in light of the obvious sensitive and proprietary nature of the Trade Secrets, Tri-Merit knew, or reasonably should have known, that Devine's acquisition and use of the Trade Secrets was unauthorized and in breach of said restrictions.

21. As a result of Devine's acquisition and use of the Trade Secrets, all ratified and adopted by Tri-Merit, Defendants have been unjustly enriched, and CTI has been damaged, including but not limited to by the absence of royalties on the use of CTI's Trade Secrets, and by the loss of revenue resulting from Devine and Tri-Merit's use of the Trade Secrets, and as may be proven at trial.

22. Furthermore, again in light of the well-known restrictions and the obvious sensitive and proprietary nature of the Trade Secrets, Defendants' acquisition and use of the Trade Secrets was willful and malicious, and CTI is therefore entitled to an award of exemplary damages and attorney fees under 18 USC Sec. 1836(b)(3).

## SECOND CAUSE OF ACTION

## Misappropriation of Trade Secrets – California Uniform Trade Secrets Act (Cal. Civ. Code Sec. 3426 *et seq.*)

*Against Devine and Tri-Merit*

23. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

24. Plaintiff incorporates by reference the allegations of paragraphs 12-16, above.

25. Plaintiff incorporates by reference the allegations of paragraphs 18-21, above.

26. Furthermore, again in light of the well-known restrictions and the obvious sensitive and proprietary nature of the Trade Secrets, Defendants' acquisition and use of the Trade Secrets was willful and malicious, and CTI is therefore entitled to an award of exemplary damages under Cal. Civ. Code Sec. 3426.3(c) and attorney fees under Cal. Civ. Code Sec. 3426.4.

## THIRD CAUSE OF ACTION

## Breach of Contract – Confidentiality Agreement

*Against Devine*

27. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

28. By virtue of his position as Director of Business Development and otherwise within the company, Devine necessarily had access to (and would use in the course of his duties) CTI's proprietary and confidential information – not just the Trade Secrets alleged in paragraphs 13-16 above, but also information not meeting the statutory definitions of "trade secrets" but nevertheless confidential. Collectively, the broader set of confidential information (the "Confidential Information") included:

    a. Information concerning the nature of CTI's business and its manner of operation;

    b. The methods, processes, and systems used by CTI in soliciting, selling, and providing its services and products to its clients;

     c. Financial and accounting information, such as cost, pricing, and billing information, client profiles, financial policies and procedures, and revenues and profit margins;

     d. Sales and marketing information, such as sales strategies and programs; and

     e. Information concerning CTI's business relationships with other persons and entities.

29. Because of his necessary access to CTI's Confidential Information, as a material condition of his employment and continued employment Devine signed multiple agreements to protect and preserve the secrecy of the Confidential Information. In the Confidentiality and Intellectual Property Assignment Agreement ("Confidentiality Agreement"), Devine agreed and acknowledged:

     a. That the Confidential Information had been developed by CTI over a period of many years and at considerable expense;

     b. That the Confidential Information constituted a major part of the value of CTI's business and provided CTI with its competitive position in the marketplace;

     c. That CTI derives actual and potential substantial economic value from the fact of its Confidential Information not being generally known to the public or to other persons or entities who can obtain economic value from their disclosure or use;

     d. That CTI expends substantial effort to produce, develop, and acquire its Confidential Information, and expends substantial effort to maintain the secrecy thereof;

     e. That the unauthorized use or disclosure of CTI's Confidential Information would be highly prejudicial to the interests of CTI and its clients, cause irreparable harm to CTI and its clients, and constitute an invasion of privacy;

     f. That in exchange for his employment and continued employment, Devine

agreed to maintain the secrecy of CTI's Confidential Information, and specifically,

    i. At all times after his employment, to hold in trust, keep confidential, not make use of, and not disclose or reveal to any third party any Confidential Information of CTI;

    ii. To use all reasonable measures to prevent the unauthorized disclosure or use of CTI's Confidential Information by others;

    iii. To advise CTI immediately if he discloses or uses CTI's Confidential Information; and

    iv. To advise CTI immediately if any third party attempts to cause him to disclose or use CTI's Confidential Information.

30. In the Confidentiality Agreement, Devine further agreed that upon termination of his employment:

    a. He would promptly deliver to CTI all records, files, software, data, documents, notes, memoranda, correspondence, and the like, containing any Confidential Information;

    b. He would protect the value of CTI's Confidential Information and prevent its misappropriation or disclosure;

    c. He would not disclose or use any Confidential Information for his benefit or for the benefit of any third party, or to the detriment of CTI or its clients; and

    d. He would sign a "Termination Certificate" affirming compliance with his obligations upon termination regarding CTI's Confidential Information.

31. Devine acknowledged and agreed that these protections in the Confidentiality Agreement were a material condition to his employment with and compensation by CTI, that he had carefully read and considered the Confidentiality Agreement and agreed that the restrictions set forth therein were fair and reasonable, supported by valid consideration, and reasonably required to protect the business interests of CTI, its members, officers, directors, employees, and

1  clients.

2  32.    Furthermore, the Confidentiality Agreement provides that it is a contract entered
3  into in Sacramento County, California, and as such shall be exclusively governed by California
4  law.

5  33.    When Devine left CTI in November of 2020, as obligated by the Confidentiality
6  Agreement, he executed the Termination Certificate in which he certified, *inter alia*, that he had
7  complied with and would continue to comply with all the terms of the Confidentiality Agreement;
8  that he did not possess nor had he failed to return any Confidential Information; and that in
9  compliance with the Confidentiality Agreement he would continue to preserve as confidential and
10 not use any Confidential Information, nor would he participate or in any way assist with the
11 unauthorized disclosure of Confidential Information.

12 34.    Notwithstanding his multiple and repeated agreements and acknowledgments of
13 obligations to protect CTI's Confidential Information, Devine nevertheless breached those
14 obligations. Commencing not long after termination of his employment, Devine transmitted,
15 downloaded, acquired, and/or otherwise transferred information and data from CTI's computer
16 systems to his own personal computer systems, and failed to turn over such information to CTI
17 following the cessation of his employment. Upon information and belief and likely to have
18 evidentiary support after reasonable discovery, the said information and data included some or all
19 of the Confidential Information. Upon information and belief and likely to have evidentiary
20 support after reasonable discovery, Devine then disclosed some or all of the Confidential
21 Information to Tri-Merit. Upon information and belief and likely to have evidentiary support after
22 reasonable discovery, Devine then used some or all of the Confidential Information to solicit
23 current and potential clients and referral sources of CTI, and to otherwise compete with CTI, to his
24 benefit.

25 35.    CTI fully performed all obligations required for it to perform under the
26 Confidentiality Agreement, or such performance was waived or excused.

27 36.    As a result of Devine's breaches of the Confidentiality Agreement, as affirmed in
28 the Termination Certificate, CTI has suffered damages in that Devine has been unjustly enriched,

{CTILLC/0002/PLD/01798231.DOCX}                11
FIRST AMENDED COMPLAINT

and CTI has further suffered damages in the form of lost revenue, and as may be proven at trial.

**FOURTH CAUSE OF ACTION**

**Breach of Contract – Severance Agreement**

*Against Devine*

37. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

38. Following termination of Devine's employment, he and CTI entered into a Severance Agreement and General Release ("Severance Agreement"), pursuant to which CTI paid Devine certain severance benefits and Devine released certain claims against CTI. The Severance Agreement again imposed obligations on Devine regarding CTI's Confidential Information.

39. Specifically, in the Severance Agreement Devine agreed and acknowledged that any use or disclosure of the Confidential Information would cause CTI irreparable harm, and that accordingly he would not use or disclose CTI's Confidential Information at any time in the future.

40. The subject matter of the Severance Agreement was solely the terms and conditions upon which CTI was willing to pay post-termination severance payments to Devine. Pursuant to the Severance Agreement, Devine released and waived all of his claims against CTI arising from or related to his employment and the Confidentiality Agreement; conversely, CTI did *not* release or waive any of its rights, remedies, or causes of action arising from or related to Devine's employment and the Confidentiality Agreement. Accordingly, all such rights, remedies, and causes of action (including the above cause of action for breach of contract) were preserved.

41. Commencing not long after termination of his employment, Devine transmitted, downloaded, acquired, and/or otherwise transferred information and data from CTI's computer systems to his own personal computer systems, and failed to turn over such information to CTI following the cessation of his employment. Upon information and belief and likely to have evidentiary support after reasonable discovery, the said information and data included some or all of the Confidential Information. Upon information and belief and likely to have evidentiary support after reasonable discovery, Devine then disclosed some or all of the Confidential Information to Tri-Merit. Upon information and belief and likely to have evidentiary support after

reasonable discovery, Devine then used some or all of the Confidential Information to solicit current and potential clients and referral sources of CTI, and to otherwise compete with CTI, to his benefit. Accordingly, Devine breached the Severance Agreement.

42. CTI fully performed all obligations required for it to perform under the Severance Agreement, or such performance was waived or excused.

43. As a result of Devine's breaches of the Severance Agreement, CTI has suffered damages in that Devine has been unjustly enriched, and CTI has further suffered damages in the form of lost revenue, and as may be proven at trial.

## FIFTH CAUSE OF ACTION

### Violation of Cal. Penal Code Sec. 502

*Against Devine and Tri-Merit*

44. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

45. Pursuant to California Penal Code Section 502, Defendants, and each of them, were prohibited from, *inter alia*:

   a. Knowingly accessing and without permission using any data, computer, computer system, or computer network, in order to wrongfully control or obtain money, property, or data;

   b. Knowingly accessing and without permission taking, copying, or making use of any data from a computer, computer system, or computer network; and

   c. Knowingly and without permission accessing or causing to be accessed any computer, computer system, or computer network.

46. Following termination of Devine's employment, either when he had already commenced working for Tri-Merit, or acting immediately prior thereto with such actions promptly ratified and adopted by Tri-Merit, he transmitted, downloaded, acquired, and/or otherwise transferred information and data from CTI's computer systems, including the Confidential Information. Although Devine claims his access was pursuant to an automatic backup routine, CTI

1  had never granted him permission to install such a backup routine. Accordingly, his access was
2  both knowing and without permission.

3     47.    Furthermore, upon information and belief and likely to have evidentiary support
4  after reasonable discovery, Devine installed his unauthorized and unpermitted backup routine
5  while still in the course and scope of his employment for CTI, thereby copying data without
6  permission each time the routine which he knowingly installed conducted a backup, and which
7  data, upon information and belief and likely to have evidentiary support after reasonable
8  discovery, he has disclosed to Tri-Merit, and both he and Tri-Merit have subsequently used to
9  solicit current and potential clients and referral sources of CTI, and to otherwise compete with
10 CTI, to his and Tri-Merit's benefit.

11    48.    As a result of this knowing and unpermitted access, CTI has suffered damages in
12 that Devine and Tri-Merit have been unjustly enriched, and CTI has further suffered damages in
13 the form of lost revenue, and CTI has reasonably and necessarily incurred damages in reviewing
14 its computers, computer systems, computer networks, computer programs, and data in response to
15 the access, and such further damages as may be proven at trial.

16    49.    Accordingly, under Cal. Penal Code § 502(e), CTI is entitled to bring a civil action
17 for such statutory violation for compensatory damages and injunctive or other equitable relief, and
18 recover attorney fees.

19    50.    Furthermore, Defendants' conduct as described herein was willful and malicious
20 within the meaning of Cal. Penal Code § 502(e)(4), and CTI is therefore entitled to exemplary
21 damages.

## SIXTH CAUSE OF ACTION

### Unfair Competition

*Against Devine and Tri-Merit*

25    51.    Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10,
26 above.

27    52.    Plaintiff incorporates by reference the allegations of paragraphs 45-50, above.

28    53.    Defendants directly compete, competed and will continue to compete with CTI by

1  soliciting CTI's existing referral networks, and/or offering the same or similar services and
2  products to CTI's former, current and/or prospective customers.
3       54.    Upon information and belief and likely to have evidentiary support after reasonable
4  discovery, in competing with CTI, Defendants utilized, utilize and will continue to utilize the data
5  knowingly accessed without permission as described above.
6       55.    As a result of the conduct alleged in this cause of action, CTI has suffered actual
7  injury. CTI's actual injuries resulting from Defendants' alleged conduct includes, without
8  limitation: loss of current referral networks and clients (and associated profits); loss of prospective
9  referral networks and clients (and associated profits).
10      56.    Defendants' conduct as described in this cause of action constituted unfair
11 competition within the meaning of Cal. Bus. & Prof. Code § 17200 et seq., and CTI is therefore
12 entitled to an injunction prohibiting Defendants from engaging in the above-described conduct.

### SEVENTH CAUSE OF ACTION

### Intentional Interference With Prospective Economic Relations

*Against Devine and Tri-Merit*

16      57.    Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10,
17 above.
18      58.    Plaintiff incorporates by reference the allegations of paragraphs 52-56, above.
19      59.    CTI has (or had at the time alleged), with its clients and referral networks, existing
20 economic relationships that are (and were) reasonably likely to produce economic benefits, in the
21 nature of profits from CTI's business. Defendants, by means of their access to CTI's data without
22 permission, and further by reason of Devine's prior work for CTI, were and are aware of such
23 relationships.
24      60.    For example, one such economic relationship, managed by Devine in his role as a
25 Director of Business Management, was CTI's relationship with the Bay Area Financial Officers
26 Group ("BAFOG"). BAFOG is a large referral network of well-established businesses in the local
27 area, with a reasonable expectation to continue needing CTI's services and products.  The BAFOG
28 relationship was an existing, long-established referral relationship that was not originated or

developed by Devine. He was assigned its management by CTI leadership, which was the source of the relationship.

61. Through its existing economic relationship with BAFOG, CTI enjoyed an exclusive referral network for tax incentive clients. The highly specialized tax incentive industry is driven by such networks. CTI derived substantial revenue from its relationship with BAFOG. When Devine, as alleged above, disclosed the data obtained knowingly and without permission to Tri-Merit, such data included details of the referral network economic relationship between CTI and BAFOG. Devine and Tri-Merit then used that data to undercut the existing economic relationship between CTI and BAFOG, and usurp CTI's position as BAFOG's exclusive tax credit referral recipient. Upon information and belief and likely to have evidentiary support after reasonable discovery, Devine and Tri-Merit have used this data to solicit other referral sources and clients of CTI's.

62. Defendants interfered with the relationships alleged in this cause of action by soliciting or attempting to solicit such clients and referral networks away from CTI, and successfully and actually disrupted some such economic relationships by soliciting such clients and referral networks away from CTI; and also, by making CTI's efforts to maintain such relationships more burdensome.

63. Defendants' use of the data was independently wrongful because it was obtained in violation of California Penal Code Section 502, as alleged above, and because it was unfair competition, as alleged above.

64. As a result of such disruption, CTI has suffered damages in the loss of revenue and future revenue from such prospective economic relations.

65. Defendants' conduct alleged in this cause of action was purposeful and intentional.

### EIGHTH CAUSE OF ACTION

**Negligent Interference With Prospective Economic Relations**

*Against Devine and Tri-Merit*

66. Plaintiff incorporates by reference the allegations of paragraphs 1-4 and 8-10, above.

67. Plaintiff incorporates by reference the allegations of paragraphs 58-64.

68. Defendants owed a duty of care to CTI not to interfere with its prospective economic relations. That duty arose from the basic obligation under the law not to injure another, and moreover from the special relationship imposed by virtue of the facts that (1) such interference was intended to affect CTI's economic relationships (by acquiring them for Defendants' own), (2) the obvious foreseeability of harm to CTI from interfering with its economic relationships, (3) the certainty that CTI has suffered the injury of the loss of the BAFOG network and, upon information and belief likely to have evidentiary support after reasonable discovery, other referral sources and clients, (4) the direct connection between Defendants' interference and the harm suffered by CTI, (5) the high degree of moral blame attributable to Defendants' use of CTI's data knowingly and without permission taken from CTI's computers, and (6) the policy of preventing future harm by imposing consequences upon actors who use such unlawful data, and unfair competition to disrupt economic relationships.

69. Defendants breached their duty of care by engaging in the conduct described in paragraphs 58-64, above. Defendants knew, or reasonably should have known, that their use of CTI's computer data was unauthorized.

70. As a result of Defendants' breach of their duty of care not to interfere with CTI's prospective economic relations, CTI has suffered damages in the loss of revenue and future revenue from such prospective economic relations.

**PRAYER FOR RELIEF**

WHEREFORE, CTI prays for judgment against Defendants as follows:

1. For damages in the estimated amount of $5,000,000 (Five Million Dollars), subject to further proof at trial;

2. For an injunction prohibiting Defendants from continuing to accept referrals from BAFOG, soliciting any client of or through BAFOG, and/or soliciting any customer or referral network identified in the Trade Secrets or the Confidential Information or the data knowingly and without permission copied from CTI's computers, from utilizing any such information and data, and requiring Defendants to return all such information and data in their possession and thereafter destroy all such stored information and data;

3. For disgorgement;

4. For exemplary damages;

5. For attorney fees and costs of suit; and

6. For such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED: January 7, 2022   LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP

By: /s/ Ravi D. Sahae by Steven H. Bovarnick
David B. Tillotson
Ravi D. Sahae
Attorneys for Plaintiff CTI III, LLC