DAVID B. TILLOTSON (State Bar # 148162)
RAVI D. SAHAE (State Bar # 276113)
LELAND, PARACHINI, STEINBERG,
    MATZGER & MELNICK, LLP
199 Fremont Street - 21st Floor
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Plaintiff CTI III, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CTI III, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY DEVINE, an individual; TRI-MERIT, LLC, an Illinois limited liability company,<br><br>Defendant. | Case No. 2:21-CV-02184-JAM-DB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BARRY DEVINE'S MOTION TO DISMISS**<br><br>**Date:** **April 5, 2022**<br>**Time:** **1:30 p.m.**<br>**Judge:** **Hon. John A. Mendez**<br>**Courtroom: 6** |

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................2

    A.  Devine's Motion to Dismiss CTI's Claim For Breach of the Confidentiality
        Agreement Should Be Denied ...................................................................2

        1.  Allegations Underlying CTI's Breach of Contract Claims ...........2

        2.  Devine's Integration Argument, At Best, Raises a Factual Question
            of the Parties' Intent ................................................................4

    B.  Devine's Motion to Dismiss CTI's Section 502 Claim And Its Derivative
        Claims Should Be Denied ..........................................................................6

        1.  Allegations Underlying CTI's Penal Code Section 502 and
            Derivative Claims .................................................................6

        2.  The FAC States a Claim for Violation of Sec. 502 Because Devine
            Used His Access to Take and Use CTI's Data Without Permission .............8

        3.  The CDAFA Does Not Require Technical Circumvention .........................9

        4.  The CDAFA Does Not Require Unauthorized *Access*. It Requires
            Unauthorized *Use* ...............................................................11

        5.  CTI's Claims Based On Section 502 Are Not Subject To the
            Economic Loss Rule...............................................................13

    C.  Leave to Amend Should be Granted .......................................................14

III.    CONCLUSION ..................................................................................................15

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

**1**

**TABLE OF AUTHORITIES**

**2**

**Page**

**3**

**CASES**

**4**

*Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, (Col. 2019) .................................................. 14

**5**

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, (N.D. Cal. 2020) ............................................. 12, 13

**6**

*Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29, (2007) ......................................... 11

**7**

*Diamos v. Walmart Inc.*, No. 219CV05526SVWGJS, 2020 WL 1942322, (C.D. Cal. Jan.
9, 2020)......................................................................................................... 14

**8**

*Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, (S.D. Cal. 2019).......................................... 12

**9**

*Erlich v. Menezes*, 21 Cal. 4th 543, (1999) ................................................................... 14

**10**

*Facebook, Inc. v. ConnectU LLC* 489 F.Supp.2d 1087, (N.D. Cal. 2007) .................................... 11

**11**

*Facebook, Inc. v. Power Ventures Inc.*, 844 F.Supp.2d 1025 (N.D. Cal. 2012) ......................... 9, 10

**12**

*Fanucchi & Limi Farms v. United Agri Prod.*, 414 F.3d 1075 (9th Cir. 2005) .............................. 5

**13**

*Garcia v. ISS Facility Servs., Inc.,* No. 20-15633, 2021 WL 1202439 (9th Cir. Mar. 30,
2021)............................................................................................................ 5

**14**

*Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803 (2012)................................................... 6

**15**

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122,
(E.D. Cal. 2008) ............................................................................................ 12

**16**

*Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617 (N.D. Cal. Mar. 1,
2017).......................................................................................................... 9, 12

**17**

**18**

*Hiossen, Inc. v. Kim*, 2016 WL 10987365 (C.D. Cal., Aug. 17, 2016, No.
CV1601579SJOMRWX) ................................................................................ 9, 12

**19**

**20**

*In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051 (N.D. Cal. 2015) ....................................................... 10

**21**

*In re OFT Expl., Inc.*, No. 95-3-193-TC, 1997 WL 195440 (N.D. Cal. Apr. 10, 1997)................... 4

**22**

*Kanno v. Marwit Cap. Partners II, L.P.*, 18 Cal. App. 5th 987 (2017) ...................................... 5, 6

**23**

*Masterson v. Sine*, 68 Cal. 2d 222 (1968) ..................................................................... 5

**24**

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004)........................................................... 1

**25**

*Multiven, Inc. v. Cisco Systems, Inc.* 725 F.Supp.2d 887, (N.D. Cal. 2010) ............................... 12

**26**

*Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, (9th Cir. 2018) ....................................... 12

**27**

**28**

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

OPPOSITION TO DEVINE'S MOTION TO DISMISS

*Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-CV-03074-MEJ, 2017 WL 423693 (N.D. Cal. Sept. 25, 2017)...................................................................................................... 9, 13

*Posephny v. AMN Healthcare Inc.*, No. 18-CV-06284-KAW, 2019 WL 452036, (N.D. Cal. Feb. 5, 2019).............................................................................................................. 6

*Rest. Consulting Servs., Inc. v. Mountzuris*, 253 F. Supp. 2d 45 (D. Mass. 2003) ......................... 5

*Shaw v. CTVT Motors, Inc.*, 232 Ariz. 30,  (Ct. App. 2013)............................................................ 14

*Try Hours, Inc. v. Douville*, 985 N.E.2d 955 (Oh. 2013)............................................................. 4, 5

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ............................................. 8, 9, 11, 13

*Weingand v. Harland Financial Solutions, Inc.*, 2012 WL 2327660, (N.D. Cal., June 19, 2012, No. C-11-3109 EMC)........................................................................................ 11

*West v. Ronquillo-Morgan*, 526 F.Supp.3d 737 (C.D. Cal. 2020) ............................................. 8, 11

*Youssefzadeh v. Glob.-IP Cayman*, No. 218CV02522JLSJCG, 2018 WL 6118436, (C.D. Cal. July 30, 2018) ........................................................................................................ 6


## STATUTES

18 USC 1030 ................................................................................................................................... 8

Cal. Penal Code § 502 ............................................................................................................. 8, 9, 14

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, (9th Cir. 2001) ...................... 15

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

OPPOSITION TO DEVINE'S MOTION TO DISMISS

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

I.      **INTRODUCTION**

Plaintiff CTI III, LLC ("CTI") submits this opposition to the motion to dismiss filed by Defendant Barry Devine.[1]

The motion should be denied. CTI's allegations sufficiently state claims upon which relief can be granted. Devine either raises factual issues, or invite this Court to disregard applicable and well-reasoned precedent.

First, the boilerplate integration clause in the Severance Agreement (Devine RJN Exh. 3) does not cancel the Confidentiality Agreement (Devine RJN Exh. 1). Express words of cancellation are necessary. In their absence, the question whether the parties intended to cancel the obligations of the Confidentiality Agreement is a question of intent to be determined from all the circumstances – including the fact that the parties concurrently *reaffirmed* those obligations (Devine RJN Exh. 2).

Second, CTI properly alleges a claim for violation of Cal. Penal Code Section 502 ("Section 502" or "CDAFA"). Validly logging in to a database, but taking or using the data without permission, constitutes a violation of Section 502. Devine's contention that technical hacking is required has been soundly rejected by the Ninth Circuit.

Third, Devine's reliance on the economic loss rule fails because Section 502 provides a basis for the tort claims which is independent of CTI's breach of contract claims.

There appears to be no California authority considering the application of Section 502 to the economic loss rule. That, in and of itself, is further reason to deny Devine's motion. *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development' . . . .  The court should be especially reluctant to dismiss on the basis of

---

[1] Effective March 1, 2022, Local Rule 230 was amended to provide that the deadline for law and motion opposition was calculated from the motion filing date, not the hearing date. Under the amended timeline, as of March 1, 2022 the opposition would already have been untimely. CTI respectfully submits that because this motion was filed on January 28, 2022, the opposition deadline should be calculated based on Local Rule 230 as it existed on that date. And in any event, under the circumstances the Court is requested to consider this opposition on its merits.

1

1   the pleadings when the asserted theory of liability is novel or extreme, since it is important that

2   new legal theories be explored and assayed in the light of actual facts rather than a pleader's

3   suppositions").

4       Lastly, because Devine has incorporated by reference the arguments made by Defendant

5   Tri-Merit in its Motion to Dismiss, CTI hereby incorporates by reference the arguments in its

6   opposition to Tri-Merit's Motion to Dismiss, filed herewith.

7       The motion should be denied. If the Court determines otherwise, leave to amend is

8   requested.

9   **II.    <u>ARGUMENT</u>**

10  **A.    Devine's Motion to Dismiss CTI's Claim For Breach of the Confidentiality Agreement Should Be Denied**

11

12  **1.    Allegations Underlying CTI's Breach of Contract Claims[2]**

13      CTI is a tax consultancy firm doing business (itself and through predecessor entities) since

14  2001. CTI is an established business in the highly-specialized tax incentive industry with clients

15  spanning diverse industries, from architecture to wineries. CTI's clients include industry leaders in

16  healthcare, construction, engineering, retail, energy, software, manufacturing, and hospitality,

17  among others. CTI's clients are primarily based in California, but not exclusively – CTI has clients

18  across the country. First Amended Complaint ("FAC") Par. 8.

19      Devine was employed by CTI from 2012 through 2020. For much of his tenure, and up

20  until the cessation of his employment on November 10, 2020, Devine held the position of Director

21  of Business Development. FAC Par. 9. Tri-Merit is Devine's current employer. Tri-Merit is a

22  competitor of CTI's in the tax incentive industry. FAC Par. 10.

23      By virtue of his position as Director of Business Development and otherwise within the

24  company, Devine necessarily had access to CTI's proprietary and confidential information. FAC

25  Par. 28. Because of his necessary access to CTI's Confidential Information, as a material condition

26  _____

27  [2] On a Rule 12(b)(6) motion to dismiss, all factual allegations of the complaint are taken as true, and all inferences are to be drawn in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice").

28

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  of his employment and continued employment Devine signed multiple agreements to protect and

2  preserve the secrecy of the Confidential Information. In the Confidentiality and Intellectual

3  Property Assignment Agreement ("Confidentiality Agreement"), Devine agreed and

4  acknowledged that at all times *after* his employment, he would hold in trust, keep confidential, not

5  make use of, and not disclose or reveal to any third party any Confidential Information of CTI.

6  FAC Par. 29.

7        In the Confidentiality Agreement, Devine further agreed that upon termination of his

8  employment he would protect the value of CTI's Confidential Information and prevent its

9  misappropriation or disclosure, he would not disclose or use any Confidential Information for his

10  benefit or for the benefit of any third party, or to the detriment of CTI or its clients, and he would

11  sign a "Termination Certificate" affirming compliance with his obligations upon termination

12  regarding CTI's Confidential Information. FAC Par. 30.

13        When Devine left CTI, on November 16, 2020, he executed the Termination Certificate

14  (Devine RJN Exh. 2) in which he certified, *inter alia*, that he had complied with and would

15  continue to comply with all the terms of the Confidentiality Agreement; that he did not possess

16  nor had he failed to return any Confidential Information; and that in compliance with the

17  Confidentiality Agreement he would continue to preserve as confidential and not use any

18  Confidential Information, nor would he participate or in any way assist with the unauthorized

19  disclosure of Confidential Information. FAC Par. 33.

20        Notwithstanding his multiple and repeated agreements and acknowledgments of

21  obligations to protect CTI's Confidential Information, Devine nevertheless breached those

22  obligations. Devine downloaded CTI's Confidential Information to his own personal computer

23  systems and, upon information and belief, disclosed some or all of the Confidential Information to

24  Tri-Merit. Upon information and belief, Devine then used some or all of the Confidential

25  Information to solicit current and potential clients and referral sources of CTI, and to otherwise

26  compete with CTI, to his benefit. FAC Par. 34.

27        Additionally, on November 30, 2020, Devine executed the Severance Agreement and

28  General Release ("Severance Agreement"), pursuant to which CTI paid Devine certain severance

1 benefits and Devine released certain claims against CTI. FAC Par. 38. Consistent with the

2 Confidentiality Agreement, the Severance Agreement preserved Devine's obligations to not use or

3 disclose CTI's Confidential Information. FAC Par. 39.

4    The subject matter of the Severance Agreement was solely the terms and conditions upon

5 which CTI was willing to pay post-termination severance payments to Devine. Pursuant to the

6 Severance Agreement, Devine released and waived all of his claims against CTI arising from or

7 related to his employment; conversely, CTI did *not* release or waive any of its rights, remedies, or

8 causes of action arising from or related to Devine's employment or the Confidentiality Agreement.

9 Accordingly, all such rights, remedies, and causes of action (including the above cause of action

10 for breach of contract) were preserved. FAC Par. 40.

11    Because Devine did use CTI's Confidential Information and disclose it to Tri-Merit, he

12 breached the Severance Agreement as well. FAC Par. 41.

13    **2. Devine's Integration Argument, At Best, Raises a Factual Question of the Parties' Intent**

14

15    Devine asks this Court to release him from the obligations of confidentiality and

16 nondisclosure he agreed to in the April 1, 2015 Confidentiality Agreement (Devine RJN Exh. 1)

17 because of the boilerplate integration clause in the November 30, 2020 Severance Agreement

 (Devine RJN Exh. 3).

18

19    The Confidentiality Agreement clearly envisions rights and obligations persisting after

20 termination of Devine's employment. RJN Exh. 1 at Secs. 7-10. Conversely, the Severance

 Agreement does not by any express language revoke or modify any such obligation.

21

22    Under these circumstances, courts reject the boilerplate argument out of hand:

23   [T]he [integration] clause is expressly limited in scope to the subject matter of the separation agreement. The subject matter of the separation agreement is clear. Specifically, the separation agreement relates to the benefits Try Hours was

24   willing to provide to Douville in exchange for his release of any and all claims he

25   may have had against Douville stemming from his employment. Indeed, the separation agreement does not reference the employment agreement or the

26   covenant not to compete.

27 *Try Hours, Inc. v. Douville*, 985 N.E.2d 955, 960 (Oh. 2013); See also, e.g., *In re OFT Expl., Inc.*,

28 No. 95-3-193-TC, 1997 WL 195440, at *2 (N.D. Cal. Apr. 10, 1997) ("standard integration clause

OPPOSITION TO DEVINE'S MOTION TO DISMISS

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1    . . . [did] not support a finding that the agreement discharged all prior existing agreements").

2    Just as in *Try Hours*, the Severance Agreement here concerns benefits in exchange for a

3 release of employee claims. RJN Exh. 3 at Secs. 2-4. Just as in *Try Hours*, the Severance

4 Agreement does not reference the Confidentiality Agreement.

5    In the absence of clear and specific revocation of the Confidentiality Agreement, the

6 boilerplate clause is insufficient. See, e.g., *Rest. Consulting Servs., Inc. v. Mountzuris*, 253 F.

7 Supp. 2d 45, 53 (D. Mass. 2003) ("For the Court to infer that the severance agreement fully

8 superseded the employment agreement, there would need to be a clear indication to that effect in

9 the language of the severance agreement"); Accord California law, see *Fanucchi & Limi Farms v.*

10 *United Agri Prod.*, 414 F.3d 1075, 1081 (9th Cir. 2005) ("The intention of the parties to extinguish

11 the prior obligation and to substitute a new agreement in its place must clearly appear").

12    Thus, at most, Devine has raised a factual question of intent. Under California law, an

13 integration clause is not determinative. *Kanno v. Marwit Cap. Partners II, L.P.*, 18 Cal. App. 5th

14 987, 1007 (2017). The Court must look at the other agreement and all of the circumstances.

15 *Garcia v. ISS Facility Servs., Inc.,* No. 20-15633, 2021 WL 1202439 (9th Cir. Mar. 30, 2021)

16 ("Although '[t]he instrument itself may help to resolve that issue,' any 'collateral agreement itself

17 must be examined to determine whether the parties intended the subjects of negotiation it deals

18 with to be included in, excluded from, or otherwise affected by the writing. Circumstances at the

19 time of the writing may also aid in the determination of such integration") citing *Masterson v.*

20 *Sine*, 68 Cal. 2d 222, 225–26 (1968).

21    The particular circumstances here include that **on November 16, 2020, Devine certified**

22 **that he would continue to abide by the Confidentiality Agreement**. RJN Exh. 2. Devine

23 contends that a mere *two weeks later*, the parties intended to cancel those obligations, without

24 actually mentioning such a cancellation in the Severance Agreement.

25    In *Kanno, supra*, the court found that the presence of multiple agreements indicated that an

26 integration clause was not intended to supersede all the agreements of the parties. *Kanno, supra*,

27 18 Cal.App.5th at 1007-08. The court also pointed to the factors that the agreements in question did

28 not contradict, and would naturally have been made separately. *Id.* Here, the separate

{CTILLC/0002/PLD/01831393.DOCX}      5

OPPOSITION TO DEVINE'S MOTION TO DISMISS

1  contemporaneous existence of the Termination Certificate and the Severance Agreement

2  demonstrates all three factors: it indicates the Severance Agreement was not intended to be

3  exclusive, it shows that the two subjects were naturally separate, and indeed the Severance

4  Agreement does not contradict any earlier term.

5          Devine's reliance on *Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803 (2012) is misplaced.

6  In that case, the two agreements did contradict each other by setting forth inconsistent scopes of

7  arbitration. *Youssefzadeh v. Glob.-IP Cayman*, No. 218CV02522JLSJCG, 2018 WL 6118436, at

8  *5 (C.D. Cal. July 30, 2018) (distinguishing *Grey* because in that case, the later agreement

9  contradicted the earlier agreement, but the subject agreements contained "no such contradiction").

10  Here, there is no such contradiction between the Confidentiality and Severance Agreements.

11          Indeed, the viability of *Grey* is questionable. *Posephny v. AMN Healthcare Inc.*, No. 18-

12  CV-06284-KAW, 2019 WL 452036, at *6 (N.D. Cal. Feb. 5, 2019) (criticizing *Grey* for "not

13  comply[ing] with *Masterson* and consider[ing] whether the IRA was naturally a separate

14  agreement or if its terms contradicted the employment contract, instead ending its inquiry with the

15  integration clause," and also distinguishing *Grey* for lack of contradictory agreements).

16          In any event, the fact-specific analysis in *Kanno* and the requirement of clear expression of

17  intent demonstrate that Devine cannot prevail on this issue at the pleading stage. The parties'

18  intent regarding the interplay of the Termination Certificate and the Severance Agreement cannot

19  be determined on this motion. Devine's challenge to this cause of action should be denied.

20        **B.**     **Devine's Motion to Dismiss CTI's Section 502 Claim And Its Derivative Claims Should Be Denied**

21

22            **1.**     **Allegations Underlying CTI's Penal Code Section 502 and Derivative Claims**

23          Following termination of Devine's employment, either when he had already commenced

24  working for Tri-Merit, or acting immediately prior thereto with such actions promptly ratified and

25  adopted by Tri-Merit, he transmitted, downloaded, acquired, and/or otherwise transferred

26  information and data from CTI's computer systems. FAC Par. 46.

27          Devine *claims* that his access was pursuant to an automated backup routine that he

28  knowingly installed – a proposition CTI does *not* admit. But even if so, any automated backup

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  routine would have been expressly unauthorized and without permission by CTI. FAC Pars. 46-

2  47.

3      Upon information and belief, Devine disclosed to Tri-Merit the data he obtained from

4  CTI's computer systems, and both he and Tri-Merit have used that data to solicit current and

5  potential clients and referral sources of CTI, and to otherwise compete with CTI, to their benefit.

6  FAC Par. 47. As a result, CTI has suffered damages in that Defendants were unjustly enriched,

7  and in the form of lost revenue, and CTI reasonably and necessarily incurred damages in

8  reviewing its computers, computer systems, computer networks, computer programs, and data in

9  response to the access. FAC Par. 48.

10      Indeed, Defendants directly compete, competed and will continue to compete with CTI by

11  soliciting CTI's existing referral networks, and/or offering the same or similar services and

12  products to CTI's former, current and/or prospective customers. FAC Par. 53. Upon information

13  and belief, in competing with CTI, Defendants utilized, utilize and will continue to utilize the data

14  knowingly accessed without permission as described above. FAC Par. 54.

15      These referral networks and clients provide existing economic relationships that are (and

16  were) reasonably likely to produce economic benefits, in the nature of profits from CTI's business.

17  Defendants, by means of their access to CTI's data without permission, and further by reason of

18  Devine's prior work for CTI, were and are aware of such relationships. FAC Par. 59. One such

19  example is CTI's relationship with the Bay Area Financial Officers Group ("BAFOG"). BAFOG

20  is a large referral network of well-established businesses in the local area, with a reasonable

21  expectation to continue needing CTI's services and products. The BAFOG relationship was an

22  existing, long-established referral relationship that was not originated or developed by Devine.

23  FAC Par. 60.

24      Through its existing economic relationship with BAFOG, CTI enjoyed an exclusive

25  referral network for tax incentive clients. The highly specialized tax incentive industry is driven by

26  such networks. CTI derived substantial revenue from its relationship with BAFOG. When Devine

27  disclosed the data obtained knowingly and without permission to Tri-Merit, such data included

28  details of the referral network economic relationship between CTI and BAFOG. Devine and Tri-

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1    Merit then used that data to undercut the existing economic relationship between CTI and

2    BAFOG, and usurp CTI's position as BAFOG's exclusive tax credit referral recipient. Upon

3    information and belief, Devine and Tri-Merit have used this data to solicit other referral sources

4    and clients of CTI's as well. FAC Par. 61.

5              **2.    The FAC States a Claim for Violation of Sec. 502 Because Devine Used
                      His Access to Take and Use CTI's Data Without Permission**

6              CTI states claims against Devine for violations of Section 502 subsections (c)(1), (c)(2),

7    and (c)(7).[3] To the extent this Court agrees with Devine that the specific subsections should be

8    cited, leave to amend is requested.

9              Importantly, CDAFA is *not* the same as the federal anti-hacking statute, 18 USC 1030 (the

10   "CFAA"). The gravamen of a CFAA claim is hacking, but the gravamen of a CDAFA claim is the

11   *unauthorized taking or use of information. West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 745

12   (C.D. Cal. 2020) ("the Ninth Circuit has explicitly held that the CDAFA is different from the

13   CFAA and therefore should be interpreted differently"), citing *United States v. Christensen*, 828

14   F.3d 763, 789 (9th Cir. 2015) ("In contrast to the CFAA, the California statute does not require

15   *unauthorized* access. It merely requires *knowing* access. What makes that access unlawful is that

16   the person 'without permission takes, copies, or makes use of' data on the computer. A plain

17

18

19   ---

     [3] Except as provided in subdivision (h), any person who commits any of the following acts is
     guilty of a public offense:

20

21   (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise
     uses any data, computer, computer system, or computer network in order to either (A) devise or
     execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain

22   money, property, or data.

23   (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a
     computer, computer system, or computer network, or takes or copies any supporting

24   documentation, whether existing or residing internal or external to a computer, computer system,
     or computer network.

25

26   . . . . (7) Knowingly and without permission accesses or causes to be accessed any computer,

27   computer system, or computer network.

28   Cal. Penal Code Sec. 502(c).

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ˢᵀ FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1   reading of the statute demonstrates that its focus is on unauthorized taking or use of information.

2   In contrast, the CFAA criminalizes unauthorized *access*, not subsequent unauthorized *use*")

3   (citations omitted, italics in original).

4   Unauthorized taking or use of information is exactly what is alleged of Devine here. (FAC

5   Pars. 46-47.)

6   This is all that is necessary to allege a Section 502(c)(2) claim. It is not necessary that

7   Devine commit any "hacking" or otherwise circumvent technical barriers. *Christensen, supra*, 828

8   F.3d at 789 ("We conclude that the term 'access' as defined in the California statute includes

9   logging into a database with a valid password and subsequently taking, copying, or using the

10  information in the database improperly. We base that conclusion primarily on the plain language

11  of the statute. Otherwise, the words 'without permission' would be redundant, since by definition

12  hackers lack permission to access a database").

13  "[U]sing valid login credentials and subsequently misusing the information obtained

14  constitutes a Section 502 violation." *Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-CV-03074-

15  MEJ, 2017 WL 4236934, at *7 (N.D. Cal. Sept. 25, 2017), quoting *Henry Schein, Inc. v. Cook*,

16  No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017); See also, e.g., *Hiossen,*

17  *Inc. v. Kim*, 2016 WL 10987365 at *3 (C.D. Cal., Aug. 17, 2016, No. CV1601579SJOMRWX)

18  (after defendant sales manager left employment with the plaintiff, the defendant used his company

19  access to log into customer accounts and solicited the plaintiff's customers with their specific

20  transaction details).

21          **3.**      **The CDAFA Does Not Require Technical Circumvention**

22  Devine relies on *Facebook, Inc. v. Power Ventures Inc.*, 844 F.Supp.2d 1025 (N.D. Cal.

23  2012) ("*Power Ventures II*") to argue that Section 502 requires circumvention of technical or

24  code-based barriers. Judge Ware's holding to that effect was based on his statutory interpretation

25  analysis from two years prior. *Power Ventures II* at 1036 (referring to *Facebook, Inc. v. Power*

26  *Ventures, Inc.*, 2010 WL 3291750 [N.D. Cal., July 20, 2010, No. C 08-05780 JW] ["*Power*

27  *Ventures I*"].) But *Christensen* et al. are clear that technical circumvention is not an element of

28  Section 502. Indeed, the Ninth Circuit on review of *Power Ventures II* effectively abandoned this

OPPOSITION TO DEVINE'S MOTION TO DISMISS

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1   holding of *Power Ventures I*. See *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069

2   (9th Cir. 2016) ("*Power Ventures III*") (finding violation of Section 502 without any showing of

3   technical circumvention).

4        Furthermore, the *Power Ventures* opinions discuss whether Sec. 502 prohibits the violation

5   of a website's terms of use. On that issue, Judge Ware's statutory analysis was ultimately

6   persuaded and controlled by the concerns of amicus curiae that the application of Sec. 502 to

7   terms of use would "expose millions of average internet users to criminal sanctions without any

8   meaningful notice." *Power Ventures I*, 2010 WL 3291750 at \*5-12.[4]

9        These concerns have no application to Devine. He is not an unsuspecting member of the

10  public violating Section 502 based on hidden terms of use. Devine's lack of permission to "take,

11  copy, or make use of" CTI's data is not derived from publicly-applicable terms of use, but from

12  CTI's employee-specific policies and restrictions, in addition to the express contracts between

13  Devine and CTI.

14       Even so, the analysis in *Power Ventures I* is flawed and distorts the plain statutory

15  language, as various cases make clear. See, e.g., *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1098–

16  1101 (N.D. Cal. 2015) (noting that "the *Power Ventures* court had not based its construction of §

17  502 on any California state authority or on the statutory language");[5] *Ronquillo-Morgan*, *supra*,

18

---

[4] See *Power Ventures I*, 2010 WL 3291750 at \*5-12 (finding statutory language ambiguous, case law conflicting, legislative statement of purpose obsolete, and ultimately concluding that "Limiting criminal liability to circumstances in which a user gains access to a computer, computer network, or website to which access was restricted through technological means eliminates any constitutional notice concerns, since a person applying the technical skill necessary to overcome such a barrier will almost always understand that any access gained through such action is unauthorized.")

[5] The *Carrier IQ* Court rejected two propositions necessarily espoused by *Power Ventures I* and two other pro-defendant decisions applying the "technical barrier" rule, *In re iPhone Application Litig.* (N.D. Cal., Sept. 20, 2011, No. 11-MD-02250-LHK) 2011 WL 4403963 and *Opperman v. Path, Inc.* (N.D. Cal. 2014) 87 F.Supp.3d 1018.

First, *Carrier IQ* rejected the proposition that "a defendant 'acts with 'permission' for purposes of the CCDFA any time it does not need to overcome 'technical or code based barriers in place to restrict or bar a user's access.'" *Carrier IQ* at 1100. Such proposition "strain[ed] the plain and ordinary meaning of the term 'permission,'" and improperly applied the "without permission"

---

{CTILLC/0002/PLD/01831393.DOCX}          10

OPPOSITION TO DEVINE'S MOTION TO DISMISS

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1  526 F.Supp.3d at 746 ("Circumventing technical barriers may be sufficient to show that a person

2  acted 'without permission,' but that does not mean it is necessary for a person to circumvent

3  technical barriers to act 'without permission.' *Christensen* makes this clear"); *Weingand, supra*,

4  2012 WL 2327660, at *5 (same, and rejecting the amicus curiae argument in *Power Ventures*:

5  "this Court fails to see such a clear distinction between technical and non-technical restrictions on

6  access; in either case, the private entity arguably determines the scope of liability based on the

7  level of restrictions it places on a user's access"); *Facebook, Inc. v. ConnectU LLC* (N.D. Cal.

8  2007) 489 F.Supp.2d 1087, 1091 [rejecting same argument: "The statute defines the criminal

9  offense: taking, copying, or using data 'without permission.' The fact that private parties are free

10  to set the conditions on which they will grant such permission does not mean that private parties

11  are defining what is criminal"].)

### 4.  The CDAFA Does Not Require Unauthorized *Access*. It Requires Unauthorized *Use*

Similarly, the CDAFA does not require that access be unauthorized. An employee who

utilizes authorized means of access to download and use data of his former employer, but without

permission for such downloading and use, violates Section 502. See, e.g., *Weingand, supra*, 2012

---

requirement to the defendant's *access*, whereas the statutory language applied the permission requirement to the defendant's *use* of the data. *Carrier IQ, supra*, 78 F.Supp.3d at 1100 fn. 10; See also, e.g., *Weingand v. Harland Financial Solutions, Inc.*, 2012 WL 2327660, at *5 (N.D. Cal., June 19, 2012, No. C-11-3109 EMC) ("Notwithstanding the reference in the title to 'unauthorized access,' Penal Code section 502 prohibits *knowing* access, followed by *unauthorized* (i.e., 'without permission') taking, copying, or use of data").

*Weingand's* parsing analysis is consistent with *Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29, 34 (2007), concerning Sec. 502 subsection (c)(7), which criminalizes "knowingly and without permission *access[ing]*." In contrast, the subsections applicable here, (c)(1) and (c)(2), criminalize "knowingly access[ing] and without permission [*using*]." *Chrisman* requires courts "to give different meanings to the words 'use' and 'access' in order to avoid rendering either word redundant." *Id.* at 34. Accordingly, because in these subsections "without permission" modifies *use* instead of *access*, the distinction must be observed, and the permission requirement cannot apply to the access. Here, Defendants' *use* of CTI's data was inarguably without permission.

Second, *Carrier IQ* also rejected the proposition that "a defendant who acts in the absence of permission does not act 'without permission'" for purposes of the statute, observing that was "an anomalous and linguistically strained result." *Carrier IQ* at 1101.

---

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET · 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 · FAX (415) 974-1520

1   WL 2327660, at *5 ("a former employee who has been terminated accesses the former employer's

2   data without permission even though his old log-in information might still be operable"); *Hiossen,*

3   *supra*, 2016 WL 10987365, at *9 ("[Employer] adequately alleges that [Employee] accessed

4   customer accounts on [Employer's] E-Book website without permission and wrongfully obtained,

5   copied, and made use of data containing [Employer's] Confidential Information and Trade

6   Secrets"); *Henry Schein, supra*, 2017 WL 783617, at *5 ("The day after Cook terminated her

7   employment, Cook logged onto HSI's computer system to access ordering and sales information,

8   and copied and/or made use of the information without HSI's permission. These facts are sufficient

9   to state a claim that Cook violated section 502"); *Multiven, Inc. v. Cisco Systems, Inc.* (N.D. Cal.

10  2010) 725 F.Supp.2d 887, 890 (departing employee used current employee's password to

11  download employer's proprietary and copyrighted software); *Hanger Prosthetics & Orthotics, Inc.*

12  *v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1132-33 (E.D. Cal. 2008) (departing

13  employees printed out customer lists and used them to solicit customers for new company).

14          Thus, there is no merit to Devine's argument based on *Oracle USA, Inc. v. Rimini Street,*

15  *Inc.*, 879 F.3d 948, 962 (9th Cir. 2018) rev'd in part (2019) 139 S.Ct. 873. In *Oracle USA*, the

16  defendants *did have permission* to download and use the plaintiff's data – just not by automatic

17  download. *Oracle USA* at 962.  But in the instant case, as in *Weingand*, *Hiossen*, *Multiven*,

18  *Hanger*, *Henry Schein*, etc., former employee Devine was not authorized to download and use

19  CTI's data <u>by any means</u>. See also, e.g., *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1058

20  (S.D. Cal. 2019) ("*Erhart I*") (use is unauthorized where "not committed within the scope of []

21  lawful employment [and] not reasonably necessary to the performance of [] work assignments").

22  To the extent the FAC does not sufficiently allege lack of authorization, leave to amend is

23  requested.

24          Likewise, there is no merit to Devine's argument based on *Brodsky v. Apple Inc.*, 445 F.

25  Supp. 3d 110, 116 (N.D. Cal. 2020). In *Brodsky*, various Apple users argued that Apple violated

26  the CFAA and the CDAFA by requiring two-factor authentication on their Apple products.

27  *Brodsky* at 116-118. Aside from its complete factual dissimilarity, *Brodsky*'s application of the

28  CDAFA is incorrect under controlling law.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1    *Brodsky* erroneously states that a CDAFA claim rises and falls with the CFAA. *Brodksy* at

2    131. *Brodsky* thus contradicts the standard, set forth in *Christensen*, that these statutes should be

3    interpreted and applied differently. *Christensen, supra*, 828 F.3d at 789 ("In contrast to the CFAA,

4    the California statute does not require unauthorized access. It merely requires knowing access.

5    What makes that access unlawful is that the person 'without permission takes, copies, or makes

6    use of' data on the computer").

7    Having so erred, *Brodsky* then applied the CFAA standard that "without authorization"

8    turns on the identity of the accessor and not the method of access, to the CDAFA. Compare

9    *Brodsky* at 129-130 (applying correct standard to CFAA claim) with *Brodsky* at 131-132 (stating,

10   without authority, that the CDAFA "without permission" requirement is equivalent to the CFAA

11   "without authorization" requirement). In so holding, *Brodsky* simply disregards the statutory

12   language that under the CDAFA, "without permission" modifies the *taking and use* of data, not

13   the *access* to data. See footnote 5, above.[6]

14   Similarly, *Brodsky* disregards the different purposes of the statutes as explained in

15   *Christensen*. Because the focus of the CFAA is unauthorized access, a fundamental element of the

16   CFAA is whether the defendant had authority for such access. But the focus of the CDAFA is

17   taking and using computer data without permission. Because Devine was not permitted to take and

18   use CTI's data, it is irrelevant how he did so.[7]

19   In sum, "using valid login credentials and subsequently misusing the information obtained

20   constitutes a Section 502 violation." *Pierry, supra*, 2017 WL 4236934 at *7. The FAC states a

21   valid claim for violation of the CDAFA.

22   **5.    CTI's Claims Based On Section 502 Are Not Subject To the Economic Loss Rule**

23   Lastly, CTI's economic interference and unfair competition claims are not subject to the

24

---

25   [6] *Brodsky* otherwise relies on *Oracle USA*, which is inapposite as explained above.

26   [7] It should be repeated that the "backup routine" explanation is alleged to be *Devine's* claim. FAC

27   Par. 46. CTI does not allege the truth of Devine's assertion. CTI alleges that Devine accessed and
downloaded CTI's computer data, and that even if it was the result of an automatic routine, it was

28   still a violation of Sec. 502. FAC Pars. 46-47. Regardless, on this Rule 12(b)(6) motion, the Court
cannot consider whether Devine is telling the truth or not.

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1   economic loss rule. The economic loss rule does not apply where "the duty that gives rise to tort

2   liability is either completely independent of the contract or arises from conduct which is both

3   intentional and intended to harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999).

4       Here, the interference and unfair competition claims are based solely on Devine's violation

5   of Section 502. This is a duty that is completely independent of the contract. It is imposed by

6   statute. See, e.g., *Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1266 (10th Cir. 2003) ("The

7   legislature has provided a statutory remedy to landlords that "exist[s] independent of a breach of

8   contract claim"); *Connectus LLC v. Ampush Media, Inc.*, No. 8:15-CV-2778-T-33JSS, 2017 WL

9   1155448, at *6 (M.D. Fla., Mar. 28, 2017) (applying California law, concluding that California

10  courts would not apply the rule to bar statutory claims).

11      Although not apparently addressed in California, courts agree that the economic loss rule

12  does not apply to statutory claims – among other reasons, because the rule is judge-made and

13  doing so would violate the doctrine of separation of powers. See, e.g., *Bermel v. BlueRadios, Inc.*,

14  440 P.3d 1150, 1157 (Col. 2019) ("[T]he legislature expressly provided a cause of action and

15  remedy . . . . to limit or abrogate a clear legislative pronouncement by reason of such judicial

16  policy concerns would offend the separation of powers"); *Shaw v. CTVT Motors, Inc.*, 232 Ariz.

17  30, 33, (Ct. App. 2013) ("statutory claims are not barred by the economic loss rule if a contrary

18  result would be inconsistent with the legislative purpose").

19      Furthermore, separate and apart from Section 502, CTI's *intentional* interference claim is

20  not subject to the economic loss rule because it is an intentional tort. *Erlich, supra* ("conduct

21  which is both intentional and intended to harm").

22      And, CTI's unfair competition claim standing alone is not barred by the rule. *Diamos v.*

23  *Walmart Inc.*, No. 219CV05526SVWGJS, 2020 WL 1942322, at *3 (C.D. Cal. Jan. 9, 2020)

24  ("claims under California's UCL . . . are not subject to the economic loss doctrine").

25      Because CTI's interference and unfair competition claims are based on Section 502, and

26  exist independently of Devine's breach of contract, they are not barred by the economic loss rule.

27      **C.    Leave to Amend Should be Granted**

28      Devine does not attack CTI's trade secret claims. His attacks go to CTI's Confidentiality

{CTILLC/0002/PLD/01831393.DOCX}       14

OPPOSITION TO DEVINE'S MOTION TO DISMISS

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

1 Agreement claim, and the Section 502 claim and its derivatives. However, notwithstanding this

2 Court's November 24, 2021 order, and the statement of compliance in Devine's notice of motion,

3 Devine never met and conferred regarding CTI's Section 502 claim.

4    This is the first time that CTI's Section 502 claim and its derivatives have faced adverse

5 argument. Even as to the contract claim, and certainly as to the Sec. 502 and derivative claims,

6 CTI should be permitted to amend. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041

7 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance

8 to amend a deficient complaint, absent a clear showing that amendment would be futile"); *Orion*

9 *Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001) ("Where

10 counsel is able to posit possible amendments that would be consistent with the operative

11 complaint and could also possibly state a claim for relief, the complaint should not be dismissed

12 on its face with prejudice . . . This rule is necessary to give plaintiffs the benefit of the broad

13 standard for surviving a Rule 12(b)(6) motion").

14    Accordingly, although CTI believes the FAC is sufficient and Devine's motion should be

15 denied, leave to amend is requested should the Court determine otherwise.

16    **III.    CONCLUSION**

17    For the foregoing reasons, the Motion to Dismiss should be denied.

18

19 DATED:  March 22, 2022          LELAND, PARACHINI, STEINBERG,
                                    MATZGER & MELNICK, LLP
20

21

22                          By:  _____/s/ Ravi D. Sahae_____
                                 David B. Tillotson
23                               Ravi D. Sahae
                                 Attorneys for Plaintiff CTI III, LLC
24

25

26

27

28

{CTILLC/0002/PLD/01831393.DOCX}          15
OPPOSITION TO DEVINE'S MOTION TO DISMISS