DAVID B. TILLOTSON (State Bar # 148162)
RAVI D. SAHAE (State Bar # 276113)
LELAND, PARACHINI, STEINBERG,
  MATZGER & MELNICK, LLP
199 Fremont Street - 21st Floor
San Francisco, California 94105
Telephone: (415) 957-1800
Facsimile: (415) 974-1520

Attorneys for Plaintiff CTI III, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CTI III, LLC, a California limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>BARRY DEVINE, an individual; TRI-MERIT, LLC, an Illinois limited liability company,<br><br>　　　　　Defendant. | Case No. 2:21-CV-02184-JAM-DB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TRI-MERIT'S MOTION TO DISMISS**<br><br>**Date:　　　April 5, 2022**<br>**Time:　　　1:30 p.m.**<br>**Judge:　　　Hon. John A. Mendez**<br>**Courtroom: 6** |

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Tri-Merit's Motion to Dismiss CTI's Section 502 Claim And Its Derivative Claims Should Be Denied | 2 |
| |    1. Allegations Underlying CTI's Penal Code Section 502 and Derivative Claims | 2 |
| |    2. The FAC States a Claim for Violation of Sec. 502 Because Tri-Merit's Employee Devine Used His Access to Take and Use CTI's Data Without Permission | 4 |
| |    3. Tri-Merit is Liable Under Section 502 | 5 |
| |    4. CTI's Claims Based On Section 502 Are Not Pre-Empted By The CUTSA | 8 |
| | B. Leave to Amend Should be Granted | 10 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, (1997) ................................................. 7

*Claridge v. RockYou, Inc.*, 785 F.Supp.2d 855 (N.D. Cal. 2011) ................................................ 6

*Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2020 WL 1550207, (S..D. Cal. Mar. 31, 2020) ........................................................................................................................ 9

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, (9th Cir. 2016) .................................... 5

*Gift v. Ahrnke*, 107 Cal. App. 2d 614, 622, 237 P.2d 706, (1951) ............................................... 7

*Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, (S.D. Cal. June 7, 2021) ............................................................................. 10

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, (E.D. Cal. 2008) ............................................................................................................... 6

*Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, (N.D. Cal. Mar. 1, 2017) ............................................................................................................................... 5

*Hiossen, Inc. v. Kim*, 2016 WL 10987365 at (C.D. Cal., Aug. 17, 2016, No. CV1601579SJOMRWX) ................................................................................................ 5

*JEB Grp., Inc. v. San Jose III*, No. CV1904230CJCAGRX, 2020 WL 2790012, (C.D. Cal. Mar. 31, 2020) ................................................................................................................. 8

*McClung v. Watt*, 190 Cal. 155, 161, 211 P. 17, (1922) .............................................................. 7

*McGary v. City of Portland*, 386 F.3d 1259, (9th Cir. 2004) ...................................................... 1

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, (9th Cir. 2015) .................................... 10

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, (9th Cir. 2001) ................. 10

*People ex rel. Herrera v. Stender*, 212 Cal. App. 4th 614, (2012) ............................................. 6

*Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-CV-03074-MEJ, 2017 WL 4236934, (N.D. Cal. Sept. 25, 2017) ......................................................................................................... 5

*Regents of the Univ. of California v. Aisen*, No. 15-CV-1766-BEN (BLM), 2016 WL 4097072, (S.D. Cal. Apr. 18, 2016) ................................................................................. 8

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010) .............................................. 8, 9

*SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, (N.D. Cal. Dec. 11, 2012) .......................................................................................................... 8, 9

*Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL 199796, (N.D. Cal. Jan. 16, 2016) .................................................................................................................. 8

*United States v. Christensen*, 828 F.3d 763, (9th Cir. 2015) ....................................... 4, 5

*West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, (C.D. Cal. 2020) ................................... 4

**STATUTES**

Cal. Penal Code § 502 ............................................................................................. passim

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

LAW OFFICES OF
LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP
199 FREMONT STREET - 21ST FLOOR
SAN FRANCISCO, CALIFORNIA 94105
TEL (415) 957-1800 • FAX (415) 974-1520

## I. INTRODUCTION

Plaintiff CTI III, LLC ("CTI") submits this opposition to the motion to dismiss filed by Defendant Tri-Merit.[1] The motion should be denied.

First, Tri-Merit is liable under Cal. Penal Code Section 502 ("Section 502" or "CDAFA") because its employee Barry Devine violated Section 502 for Tri-Merit's benefit. Tri-Merit's contention that an entity cannot be liable for its employee's violation of Section 502 has no legal basis and would render all entities immune to the CDAFA, an impermissible result.

Second, Tri-Merit admits as it must that CTI's Section 502 claim is not pre-empted by the California Uniform Trade Secrets Act ("CUTSA"). And yet, Tri-Merit asserts that CTI's economic interference and unfair competition claims, which are based solely on the Section 502 violation, should nevertheless be pre-empted. Tri-Merit's contention is illogical and contrary to law. Pre-emption applies to claims which seek recovery for information protected because it is *confidential*. But Section 502 provides protection for information because it is *computerized*. Although those categories can overlap, the Section 502 protection is nevertheless an independent right which supports CTI's tort claims and defeats pre-emption.

There appears to be no California authority considering the application of Section 502 to pre-emption of derivative tort claims. That, in and of itself, is further reason to deny Tri-Merit's motion. *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development' . . . . The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions").

---

[1] Effective March 1, 2022, Local Rule 230 was amended to provide that the deadline for law and motion opposition was calculated from the motion filing date, not the hearing date. Under the amended timeline, as of March 1, 2022 the opposition would already have been untimely. CTI respectfully submits that because this motion was filed on January 28, 2022, the opposition deadline should be calculated based on Local Rule 230 as it existed on that date. And in any event, under the circumstances the Court is requested to consider this opposition on its merits.

OPPOSITION TO TRI-MERIT'S MOTION TO DISMISS

The motion should be denied. If the Court determines otherwise, leave to amend is requested.

**II. ARGUMENT**

**A. Tri-Merit's Motion to Dismiss CTI's Section 502 Claim And Its Derivative Claims Should Be Denied**

**1. Allegations Underlying CTI's Penal Code Section 502 and Derivative Claims[2]**

CTI is a tax consultancy firm doing business (itself and through predecessor entities) since 2001. CTI is an established business in the highly-specialized tax incentive industry with clients spanning diverse industries, from architecture to wineries. CTI's clients include industry leaders in healthcare, construction, engineering, retail, energy, software, manufacturing, and hospitality, among others. CTI's clients are primarily based in California, but not exclusively – CTI has clients across the country. First Amended Complaint ("FAC") Par. 8.

Devine was employed by CTI from 2012 through 2020. For much of his tenure, and up until the cessation of his employment on November 10, 2020, Devine held the position of Director of Business Development. FAC Par. 9. Tri-Merit is Devine's current employer. Tri-Merit is a competitor of CTI's in the tax incentive industry. FAC Par. 10.

Following termination of Devine's employment, either when he had already commenced working for Tri-Merit, or acting immediately prior thereto with such actions promptly ratified and adopted by Tri-Merit, he transmitted, downloaded, acquired, and/or otherwise transferred information and data from CTI's computer systems. FAC Par. 46.

Devine *claims* that his access was pursuant to an automated backup routine that he knowingly installed – a proposition CTI does *not* admit. But even if so, any automated backup routine would have been expressly unauthorized and without permission by CTI. FAC Pars. 46-47.

---

[2] On a Rule 12(b)(6) motion to dismiss, all factual allegations of the complaint are taken as true, and all inferences are to be drawn in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice").

{CTILLC/0002/PLD/01831394.DOCX}   2

OPPOSITION TO TRI-MERIT'S MOTION TO DISMISS

Upon information and belief, Devine disclosed to Tri-Merit the data he obtained from CTI's computer systems, and both he and Tri-Merit have used that data to solicit current and potential clients and referral sources of CTI, and to otherwise compete with CTI, to their benefit. FAC Par. 47. As a result, CTI has suffered damages in that Defendants were unjustly enriched, and in the form of lost revenue, and CTI reasonably and necessarily incurred damages in reviewing its computers, computer systems, computer networks, computer programs, and data in response to the access. FAC Par. 48.

Indeed, Defendants directly compete, competed and will continue to compete with CTI by soliciting CTI's existing referral networks, and/or offering the same or similar services and products to CTI's former, current and/or prospective customers. FAC Par. 53. Upon information and belief, in competing with CTI, Defendants utilized, utilize and will continue to utilize the data knowingly accessed without permission as described above. FAC Par. 54.

These referral networks and clients provide existing economic relationships that are (and were) reasonably likely to produce economic benefits, in the nature of profits from CTI's business. Defendants, by means of their access to CTI's data without permission, and further by reason of Devine's prior work for CTI, were and are aware of such relationships. FAC Par. 59. One such example is CTI's relationship with the Bay Area Financial Officers Group ("BAFOG"). BAFOG is a large referral network of well-established businesses in the local area, with a reasonable expectation to continue needing CTI's services and products. The BAFOG relationship was an existing, long-established referral relationship that was not originated or developed by Devine. FAC Par. 60.

Through its existing economic relationship with BAFOG, CTI enjoyed an exclusive referral network for tax incentive clients. The highly specialized tax incentive industry is driven by such networks. CTI derived substantial revenue from its relationship with BAFOG. When Devine disclosed the data obtained knowingly and without permission to Tri-Merit, such data included details of the referral network economic relationship between CTI and BAFOG. Devine and Tri-Merit then used that data to undercut the existing economic relationship between CTI and BAFOG, and usurp CTI's position as BAFOG's exclusive tax credit referral recipient. Upon

information and belief, Devine and Tri-Merit have used this data to solicit other referral sources and clients of CTI's as well. FAC Par. 61.

### 2. The FAC States a Claim for Violation of Sec. 502 Because Tri-Merit's Employee Devine Used His Access to Take and Use CTI's Data Without Permission

CTI states claims against Tri-Merit for violations of Cal. Penal Code Sec. 502 (the "CDAFA") subsections (c)(1), (c)(2), and (c)(7).[3]

Importantly, CDAFA is *not* the same as the federal anti-hacking statute, 18 USC 1030 (the "CFAA"). The gravamen of a CFAA claim is hacking, but the gravamen of a CDAFA claim is the *unauthorized taking or use of information*. *West v. Ronquillo-Morgan*, 526 F.Supp.3d 737, 745 (C.D. Cal. 2020) ("the Ninth Circuit has explicitly held that the CDAFA is different from the CFAA and therefore should be interpreted differently"), citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) ("In contrast to the CFAA, the California statute does not require *unauthorized* access. It merely requires *knowing* access. What makes that access unlawful is that the person 'without permission takes, copies, or makes use of' data on the computer. A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information. In contrast, the CFAA criminalizes unauthorized *access*, not subsequent unauthorized *use*") (citations omitted, italics in original).

---

[3] Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

. . . . (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code Sec. 502(c).

Unauthorized taking or use of information is exactly what is alleged of Defendants here. (FAC Pars. 46-47.)

This is all that is necessary to allege a Section 502(c)(2) claim. It is not necessary that Defendants commit any "hacking" or otherwise circumvent technical barriers. *Christensen, supra*, 828 F.3d at 789 ("We conclude that the term 'access' as defined in the California statute includes logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly. We base that conclusion primarily on the plain language of the statute. Otherwise, the words 'without permission' would be redundant, since by definition hackers lack permission to access a database").

"[U]sing valid login credentials and subsequently misusing the information obtained constitutes a Section 502 violation." *Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-CV-03074-MEJ, 2017 WL 4236934, at *7 (N.D. Cal. Sept. 25, 2017), quoting *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017); See also, e.g., *Hiossen, Inc. v. Kim*, 2016 WL 10987365 at *3 (C.D. Cal., Aug. 17, 2016, No. CV1601579SJOMRWX) (after defendant sales manager left employment with the plaintiff, the defendant used his company access to log into customer accounts and solicited the plaintiff's customers with their specific transaction details).

### 3. Tri-Merit is Liable Under Section 502

Tri-Merit argues that it cannot be held liable for its employee Devine's violation of Sec. 502, and the "knowing access" element cannot be satisfied by its knowing acceptance and use of CTI's computer information. Tri-Merit is wrong on both points.

First, an employer is liable for the employee's violation of Sec. 502. Thus, in *Power Ventures III*, both the defendant entity, and its corporate officer who controlled the unlawful scheme, were liable under Sec. 502. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("*Power Ventures III*"). Likewise in *Hiossen, Inc. v. Kim*, the access and unauthorized use of company information was committed by the former employee, Eugene Kim. Nevertheless, Kim's new employer was properly alleged to be liable. *Hiossen, supra*, 2016 WL 10987365 at *9.

{CTILLC/0002/PLD/01831394.DOCX} 5

Tri-Merit relies on *Claridge v. RockYou, Inc.*, 785 F.Supp.2d 855 (N.D. Cal. 2011), but that case is inapposite and does not discuss *respondeat superior*. Rather, in *Claridge*, the plaintiff alleged that the defendant online service failed to use commercially reasonable protective measures to guard her personal data, allowing a hacker to access the data. *Claridge* at 863. There was no relationship between the hacker and the online service. *Id.* ("[P]laintiff seeks to impose liability on defendant for *third party* hackers' unauthorized access") (italics in original).

Notably, *Claridge* recognizes that Section 502 "impose[s] liability against individuals **or entities** who are alleged to have actually participated in unauthorized 'hacking' or the unlawful disclosure of information." *Claridge* at 863 (emphases added). An entity can only act through its agents and employees. See, e.g., *People ex rel. Herrera v. Stender*, 212 Cal. App. 4th 614, 638 (2012). If Tri-Merit were correct, it would be impossible for an entity to ever violate Section 502. That cannot be the law. At a minimum, Tri-Merit is liable for Devine's knowing access and unauthorized use committed while employed for Tri-Merit.

Second, even as to Devine's access and unauthorized use committed while employed for CTI, Tri-Merit can still be liable pursuant to agency. The FAC alleges that Devine and Tri-Merit used the data Devine wrongfully downloaded to undercut existing economic relationships between CTI and referral sources (including BAFOG), and likely other referral sources and clients as well. FAC Pars. 61-62.[4]

Thus, the FAC alleges the participating beneficiary of Devine's conduct was Tri-Merit. This is sufficient to impose liability. *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1132-33 (E.D. Cal. 2008). In *Hanger*, yet another case where former employees took former company customer lists without permission and left for a competitor, the defendant company sought summary judgment based on evidence that the former employees were not hired by the defendant until after downloading the data. However, the evidence showed that the employees had already begun discussions with the competitor, including

---

[4] These allegations incorporate and are tied to the Section 502 allegations. Although the incorporation is sequential, the allegations are clearly linked. To the extent that the FAC should be amended to incorporate these paragraphs into the Section 502 claim, leave to amend is requested.

{CTILLC/0002/PLD/01831394.DOCX}  6

OPPOSITION TO TRI-MERIT'S MOTION TO DISMISS

discussions of bringing referral sources to the new company. *Hanger* at 1134-1135. Summary judgment under Sec. 502 was denied because a jury could reasonably infer that the employees downloaded the customer lists for the benefit of their new employer. *Hangar* at 1135.[5]

Even if Tri-Merit was not contemporaneously aware of Devine's actions, knowing acceptance of the benefits of the transaction constitutes a ratification. See, e.g., *McClung v. Watt*, 190 Cal. 155, 161, 211 P. 17, 20 (1922) (where a corporation "accepts the fruits of a fraud, with knowledge of the misrepresentations or concealments by which the fraud was perpetrated, [it] thereby inferentially ratifies the fraud complained of and will be liable therefor, even though [it] did not personally participate in the fraud, and this is so apart from any consideration of the theory of agency").

Like civil liability under Section 502 ("*knowing* access"), fraud has a scienter requirement ("*knowledge* of falsity"). *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1476 (1997). In the context of ratification, such knowledge can be subsequent, not contemporaneous. *Gift v. Ahrnke*, 107 Cal. App. 2d 614, 622, 237 P.2d 706, 711 (1951) ("The fact that Ahrnke was unaware of the fraud during the time of its commission and the return of Ahrnke's securities to him, did not operate to prevent ratification by Ahrnke when, a few months later, he learned the details of the fraud and did not then disaffirm the acts of Hammill, but continued to retain the benefit of those acts"). To the extent the FAC should be amended to allege that Tri-Merit knew or reasonably should have known that Devine was accessing and without permission using data from CTI's servers, based on the nature of the data and Tri-Merit's knowledge of CTI's employee restrictions on use, leave to amend is requested.

At a minimum, once CTI put Tri-Merit on notice of Devine's actions, Tri-Merit's refusal to disgorge the benefits of Devine's actions constituted a ratification. To the extent the FAC should be amended to allege CTI's notice and Tri-Merit's continued acceptance of benefits, leave to amend is requested.

---

[5] Nevertheless, to the extent the FAC should be amended to allege that on information and belief Devine had already commenced discussions with Tri-Merit including the subject of bringing referral sources to the new company, leave to amend is requested.

{CTILLC/0002/PLD/01831394.DOCX} 7

OPPOSITION TO TRI-MERIT'S MOTION TO DISMISS

### 4. CTI's Claims Based On Section 502 Are Not Pre-Empted By The CUTSA

Tri-Merit argues that CTI's causes of action for economic interference and unfair competition are pre-empted by the CUTSA. However, these causes of action do not incorporate any allegations about trade secrets. Rather, they incorporate the allegations of CTI's Section 502 claim. FAC Pars. 52, 58, 63, and 67.

The CUTSA "does not preempt the statutory § 502 claim." *Regents of the Univ. of California v. Aisen*, No. 15-CV-1766-BEN (BLM), 2016 WL 4097072, at *8 (S.D. Cal. Apr. 18, 2016) ("it is illogical to think that the California legislature enacted a computer crime provision and deliberately included a civil remedy that would in turn be preempted by other legislation authorizing civil protection for trade secrets"); accord *JEB Grp., Inc. v. San Jose III*, No. CV1904230CJCAGRX, 2020 WL 2790012, at *4 (C.D. Cal. Mar. 31, 2020) ("Because MoTek's CCCDAFA claim is based upon a statutory violation, not common law, it is not preempted").[6]

Accordingly, Section 502 provides enforceable rights in misappropriated data that are independent of trade secret law. Such independent rights defeat preemption.

Tri-Merit bases its argument on a line of cases arising from a footnote in *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010). See *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *4 (N.D. Cal. Dec. 11, 2012) and its progeny. The decisions have largely eviscerated common law tort liability in business litigation. See *Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016) ("Based on 25 years of practice in California and 16 years on the bench in California, the undersigned judge finds the preemptive sweep of *Silvaco* extraordinarily surprising as a development in California law").

Be that as it may, the fundamental reasoning of this line of case law is that there must be *some independent basis* for protection of information. If the basis for protection is that the information is *confidential*, then a plaintiff must meet the elements of trade secret law to be

---

[6] As Tri-Merit acknowledges, this Court followed *Aisen* and *JEB* in *R.R. Donnelley & Sons Co. v. Pappas*, No. 2:21-CV-00753-JAM-AC, 2021 WL 3488502 (E.D. Cal. Aug. 9, 2021).

{CTILLC/0002/PLD/01831394.DOCX}  8

OPPOSITION TO TRI-MERIT'S MOTION TO DISMISS

entitled to remedies. *Silvaco* at 239 fn. 22 ("[A] prime purpose of the [CUTSA] was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.' Central to the effort was the act's definition of a trade secret. Information that does not fit this definition, **and is not otherwise made property by some provision of positive law**, belongs to no one, and cannot be converted or stolen") (emphasis added).

Penal Code Section 502 provides that independent basis. **The fundamental purpose of the statute is to protect information stored on computers. The information is not protected because it is confidential**:

> It is the intent of the Legislature in enacting this section **to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data** and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.
>
> The Legislature further finds and declares that **protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data** is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

Cal. Penal Code Sec. 502(a).

Because the gravamen of a Section 502 claim is the protection of computer information, *not* the protection of confidential information, it alleges a wrong that is *not* preempted by the CUTSA. *SunPower, supra*, 2012 WL 6160472, at *5 ("If the basis of the alleged property right is in essence that the information is that it is 'not ... generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded"); See *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2020 WL 1550207, at *38 (S.D. Cal. Mar. 31, 2020) (no preemption for information protected by federal and state finance regulations).

And therefore, because the gravamen of each interference and competition claim is the Sec. 502 violation, which is *not* a wrong based on confidentiality of information, the additional

claims are not preempted. See, e.g., *Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, No. 21-CV-0052-GPC-DEB, 2021 WL 2317410, at *11 (S.D. Cal. June 7, 2021) (interference and unfair competition claims not preempted where based on more than misappropriation of confidential information).

Indeed, given that the Section 502 claim itself is not preempted, it would be illogical and nonsensical that its derivative claims would be preempted. The claim and its derivatives are independent and not barred by the CUTSA.

### B. Leave to Amend Should be Granted

Tri-Merit does not attack CTI's trade secret claims. Its attacks go to CTI's Section 502 claim and its derivatives. However, notwithstanding this Court's November 24, 2021 order and the statement of compliance in Tri-Merit's notice of motion, Tri-Merit never met and conferred regarding CTI's Section 502 claim.

This is the first time that CTI's Section 502 claim and its derivatives have faced adverse argument. If any are defective, CTI should be permitted to amend. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile"); *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir. 2001) ("Where counsel is able to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its face with prejudice . . . This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion").

Accordingly, although CTI believes the FAC is sufficient and Tri-Merit's motion should be denied, leave to amend is requested should the Court determine otherwise.

### III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.

| | | |
|---|---|---|
| DATED: March 22, 2022 | | LELAND, PARACHINI, STEINBERG, MATZGER & MELNICK, LLP |
| | By: | /s/ Ravi D. Sahae |
| | | David B. Tillotson |
| | | Ravi D. Sahae |
| | | Attorneys for Plaintiff CTI III, LLC |